IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

DAVID L. JOHNSON,                    :

     Plaintiff,                      :

vs.                                  :   CIVIL ACTION 05-0196-WS-M

ISAAC MOODY, et al.,                 :

     Defendants.                     :


<u>REPORT AND RECOMMENDATION</u>

This is an action under 42 U.S.C. § 1983 by an Alabama
prison inmate, proceeding *pro se* and *in forma pauperis*, which has
been referred for report and recommendation pursuant to 28 U.S.C.
§ 636(b)(1)(B) and Local Rule 72.2(c)(4).  Plaintiff claims that
defendant Correctional Officer Isaac Moody used excessive force
against him by closing the tray door of his prison cell on
plaintiff's right hand, thereby cutting his finger.  (Doc. 1 at
4-5).  Plaintiff also claims that defendant Correctional Officer
Eddie Dunsford watched the alleged incident and failed to protect
plaintiff.  (*Id.*).  Plaintiff alleges that the actions of
defendants Moody and Dunsford violated the Eighth Amendment
prohibition against cruel and unusual punishment.  As relief,
plaintiff seeks punitive damages in the amount of $100,000
against defendants Moody and Dunsford.[1]  (Doc. 1 at 7).

---

[1]In plaintiff's pleading styled "Objection," filed on
October 5, 2005, although not clear, it appears that plaintiff
may actually be seeking $100,000 in punitive damages from each

Defendants Moody and Dunsford filed an answer (Docs. 10 and 16) and a special report (Docs. 10 and 26) initially on June 13, 2005, denying that they violated plaintiff's constitutional rights and contending that plaintiff has not suffered sufficient injury to state a claim.  Additionally, defendants have asserted the affirmative defenses of sovereign and qualified immunity. (Doc. 10).  Plaintiff has filed numerous motions during the litigation of this action, including an objection to defendants' answer and special report, on October 5, 2005, reiterating his original claims and offering some additional facts.[2]  (Docs. 3, 12, 14, 17, 18, 22, 23, 28, 31, 33, and 35).  On September 29, 2005, this Court entered an Order converting defendants' special report and answer to a motion for summary judgment.  (Doc. 29). In accordance with the Court's Order, defendants' motion for summary judgment was taken under submission on October 19, 2005. After consideration by the Court, it is recommended that defendants' motion for summary judgment be granted, that this action be dismissed with prejudice, and that judgment be entered

_____

defendant, for a sum total of requested damages of $200,000. (Doc. 31).  The inconsistency is moot, however, as the Court has determined that plaintiff has failed to state a constitutional claim in this action.

[2]In support of his action, plaintiff has also offered his own affidavit along with the affidavits of five of his fellow inmates.  Each affidavit reiterates plaintiff's original claims. (Doc. 31, Exs. 5-10).

in favor of defendants Isaac Moody and Eddie Dunsford and against plaintiff David L. Johnson on all claims.

<u>I. FACTS</u>

On March 16, 2005, at or around 4:30 a.m., while incarcerated at Holman Correctional Facility ("Holman"), plaintiff suffered a cut to his right middle finger when it was hit by the closing of his cell's metal tray door, which was allegedly kicked by defendant Officer Isaac Moody. (Doc. 1 at 4; doc. 31 at 1). Plaintiff states that defendant Officer Moody was in the process of passing out breakfast trays and that plaintiff informed defendant Moody that he did not want his breakfast tray because it had been sitting out on the cart and was cold. (Doc. 31 at 2).

When plaintiff requested a supervisor, he contends that Officer Moody called on his radio for two more officers to come to plaintiff's cell door. (*Id.*). When defendant Officer Dunsford and Officer Anderson arrived at his cell, defendant Officer Moody requested pepper spray from Officer Anderson. (*Id.*). Upon hearing that, according to plaintiff, he began to move his arm back into his cell, but defendant Officer Moody kicked the metal tray door closed before plaintiff's hand was completely removed from the doorway. (*Id.*).

Plaintiff further asserts that defendant Officer Moody then

3

resumed his job of passing out breakfast trays, despite plaintiff informing him that he was in need of medical treatment. Additionally, plaintiff claims that defendant Officer Eddie Dunsford witnessed the incident, and responded by laughing.  (*Id.* at 2, 3).

According to defendants, at the time of the alleged incident, Officer Moody was passing out breakfast trays, and was attempting to give plaintiff his diabetic breakfast tray when plaintiff reached his entire arm out of the door and refused to accept the tray.  (Doc. 10 at 3, Ex. A at 1).  Plaintiff requested a regular tray, but defendant Officer Moody advised plaintiff that he could only have the diabetic tray.  (*Id.*). Plaintiff still refused to accept the tray, so defendant Officer Moody ordered plaintiff to pull his arm back into his cell so that Officer Moody could close plaintiff's tray door.  (*Id.*). Initially, according to defendants, plaintiff refused the order, but subsequently, complied and pulled his arm back into his cell. (*Id.*, Ex. A at 1).  At that time, as defendant Moody still had plaintiff's breakfast tray in his hands, he used his right foot to close plaintiff's tray door.  (*Id.,* Ex. A at 1-2).  When the door was closed, plaintiff informed defendant Officer Moody that the door had closed on his finger.  (*Id.,* Ex. A at 2).

Subsequently, defendant Moody reported the incident to Lt.

Lloyd Hicks, and Officers Keith Anderson and Eddie Dunsford
escorted plaintiff to the Health Care Unit for medical treatment.
(*Id.*, Ex. A at 2).  Plaintiff's condition upon admission at the
Health Care Unit was noted by the medical staff as "good," and he
was treated for a cut on his right middle finger. (Doc. 10, Ex.
A at 5).  That treatment included a tetanus shot and the
application of a steri-strip to the wound.  (*Id.*).  Plaintiff was
also given Motrin for pain.  (*Id.*).  The medical records reflect
that plaintiff's sole injury was a cut on his right middle
finger, and plaintiff has not attempted to dispute the truth or
accuracy of these records.  (*Id.*).

Regarding defendant Dunsford's involvement in this incident,
Officer Dunsford has averred that he did not witness the incident
but instead was on tier 13-U passing out milk when the incident
occurred, and did not become involved until he was instructed by
Lt. Hicks to escort plaintiff to the Health Care Unit.  (Doc. 10,
Ex. B).  Following the incident, defendant Officer Moody prepared
an Institutional Incident Report charging plaintiff with rule
violation #56, failure to obey a direct order.  (Doc. 10, Ex. A
at 3-4).

As a result of the allegedly intentional acts by Officers
Moody and Dunsford, plaintiff contends that he suffered pain and
that he has continued to receive medical treatment for his

finger.  In this action, plaintiff has requested punitive
damages. (Doc. 1 at 7; doc. 31 at 6-7).

<u>II. SUMMARY JUDGMENT STANDARD</u>

In analyzing the propriety of a motion for summary judgment,
the Court begins with these basic principles.  The *Federal Rules
of Civil Procedure* grant this Court authority under Rule 56 to
render "judgment as a matter of law" to a party who moves for
summary judgment.  "[S]ummary judgment is proper 'if the
pleadings, depositions, answers to interrogatories, and
admissions on file, together with the affidavits, if any, show
that there is no genuine issue as to any material fact. . . .'"
*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting *Fed.
R. Civ. P.* 56(c)).  The Court must view the evidence produced by
"the nonmoving party, and all factual inferences arising from it,
in the light most favorable to" that party.  *Barfield v.
Brierton*, 883 F.2d 923, 934 (11th Cir. 1989).

However, Rule 56(e) states that:

> an adverse party [to a motion for summary
> judgment] may not rest upon the mere
> allegations or denials of the adverse party's
> pleading, but the adverse party's response,
> by affidavits or as otherwise provided in
> this rule, must set forth specific facts
> showing that there is a genuine issue for
> trial.  If the adverse party does not so
> respond, summary judgment, if appropriate,
> shall be entered against the adverse party.

*Fed. R. Civ. P.* 56(e); *see also Celotex Corp.*, 477 U.S. at

6

325-27.  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable or is not significantly probative, summary judgment may be granted."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (internal citations omitted).  "Summary judgment may be granted against a party who fails to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial."  *Liberty Mut. Fire Ins. Co. v. Sahawneh*, 2001 WL 530424, *1 (S.D. Ala. May 11, 2001) (citing *Anderson*, 477 U.S. at 249-50).

## III. DISCUSSION

In this action, plaintiff seeks redress for an alleged constitutional deprivation pursuant to 42 U.S.C. § 1983.  Section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .  For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

7

42 U.S.C. § 1983 (1994).

Plaintiff claims that defendant Officer Moody violated his Eighth Amendment right to be free from cruel and unusual punishment by slamming his right hand in his cell's metal tray door, causing an injury to his right middle finger.  (Doc. 1 at 4).  Plaintiff further claims that defendant Officer Dunsford witnessed the incident and failed to protect him from Officer Moody.[3]  (*Id*.).

Officer Moody denies plaintiff's allegations, and

---

[3]Plaintiff states that he is suing each defendant in his individual capacity.  The Court assumes that plaintiff is not, therefore, suing defendants in their official capacities.  However, to the extent that plaintiff does intend to sue defendants in their official capacities, it should be noted that, as state officials, defendants are absolutely immune from suit for damages in their official capacities.  *See Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998)(state officials sued in their official capacities are protected from suit for damages under the Eleventh Amendment).  Moreover, "[q]ualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Dalrymple v. Reno*, 334 F.3d 991, 994 (11th Cir. 2003)(quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)).  In determining whether qualified immunity is appropriate in a given case, "[t]he court must first ask the threshold question whether the facts alleged, taken in the light most favorable to the plaintiffs, show that the government official's conduct violated a constitutional right." *Dalrymple*, 334 F.3d at 995 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  Having determined herein that plaintiff's allegations do not establish a constitutional violation, "there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201.

maintains that when plaintiff refused to accept his breakfast tray, Officer Moody ordered plaintiff to pull his arm back into the cell from the tray door opening. (Doc. 10, Ex. A at 1). According to Officer Moody, plaintiff refused initially, but after a second order, plaintiff complied and removed his arm from the doorway. (*Id*.). Officer Moody then closed the metal tray door using his right foot, since he was holding plaintiff's breakfast tray in his hands. (*Id*., Ex. A at 2). Officer Moody has averred that he was not aware that plaintiff's hand was still in the metal tray door opening, and that he had no intention of causing bodily harm to plaintiff. (*Id.,* Ex. A). Officer Dunsford avers that he was not even present at the time the incident occurred. (Doc. 10, Ex. B).

In addressing an excessive force claim brought under § 1983, the Court begins its analysis "by identifying the specific constitutional right allegedly infringed by the challenged application of force." *Graham v. Connor*, 490 U.S. 386, 394 (1989). The Eighth Amendment, which attaches "after conviction and sentence," protects incarcerated prisoners from punishment that is "cruel and unusual." *Graham*, 490 U.S. at 393 n.6; *see also Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979); *Ingraham v. Wright*, 430 U.S. 651, 671 n.40 (1977). Specifically, the Eighth Amendment "prohibits the unnecessary and wanton infliction of pain. . . , the infliction of pain totally without penological justification. . . , [and] the infliction of punishment grossly

disproportionate to the severity of the offense." *Ort v. White*,
813 F.2d 318, 321 (11th Cir. 1987)(citing *Rhodes v. Chapman*, 452
U.S. 337, 346 (1981)).  At the time of Officer Moody's alleged
use of excessive force in this case, plaintiff was being held at
Holman after being convicted in 2000 of robbery and sentenced to
twenty years in prison.  (Doc. 1 at 6).  Thus, the Eighth
Amendment applies to this case.

In order to establish an Eighth Amendment claim, plaintiff
must prove both an objective and subjective component.  First,
plaintiff must show that the alleged wrongdoing was objectively
"harmful enough" to establish a constitutional violation, and,
second, plaintiff must show that the official "act[ed] with a
sufficiently culpable state of mind," *i.e.*, that he acted
"maliciously or sadistically to cause harm." *Hudson v.
McMillian*, 503 U.S. 1, 7-8 (1992).  In the prison security
context, the factors used to determine whether there has been a
violation of the Eighth Amendment are: the need for the
application of force, the relationship between that need and the
amount of force used, the threat reasonably perceived, any
efforts to temper the severity of a forceful response, and the
extent of injury suffered. *Id.*, 503 U.S. at 7 (citing *Whitley v.
Albers*, 475 U.S. 312, 321 (1986) (citing *Johnson v. Glick*, 481
F.2d 1028, 1033 (2d Cir. 1973)).

Considering the evidence in the light most favorable to
plaintiff, the question is whether a jury could reasonably

10

conclude that defendants violated plaintiff's rights under the
Eighth Amendment.  Under the circumstances of this case, the
Court finds that plaintiff's allegations fail to establish a
constitutional violation.

According to plaintiff, on the day in question, he reached
his hand through his open tray door in an attempt to refuse a
cold breakfast tray.  (Doc. 31 at 6).  Plaintiff admits that he
refused to comply with Officer Moody's order to return his arm to
his cell, referring to his behavior as a "peaceful protest about
the cold food."  (*Id.*).  Plaintiff asserts that Officer Moody
kicked the tray door closed on plaintiff's hand, cutting
plaintiff's right middle finger, while Officer Dunsford watched
and laughed.  (Docs. 1 and 31).  However, the evidence in this
action reflects that Officer Moody was attempting to have
Plaintiff return his arm into his cell, in an apparent attempt to
maintain security and restore discipline.  (Doc. 10, Ex. A).  The
evidence further indicates that Officer Moody was not aware that
plaintiff's hand was still in the doorway when he closed the
metal tray door.  (*Id.*).  This Court has previously noted that
"[w]e give a wide range of deference to prison officials' actions
in preserving discipline and security."  *Anderson v. Jones*, 1999
WL 1565203, * 7 (S.D. Ala. 1999), *aff'd without opinion*, 245 F.3d
795 (11th Cir. 2000).  "[T]he management by a few guards of large
numbers of prisoners, not usually the most gentle and tractable
of men and women, may require and justify the occasional use of a

11

degree of intentional force." *Id.*, quoting *Bennett v. Parker*,
898 F.2d 1530, 1533 (11th Cir. 1990).  Notably, plaintiff has not
denied that he was breaking prison rules and regulations by
refusing to return his arm into his cell when ordered to do so by
Officer Moody, referring to his refusal to follow defendant
Moody's order as a "peaceful protest."  However, prisons are not
places for "peaceful protests."  Further, plaintiff has not
offered evidence that would indicate that defendants were acting
"maliciously or sadistically to cause harm." *Hudson*, 503 U.S. at
7-8.  Moreover, assuming plaintiff's allegations of excessive
force as true, plaintiff still must establish that this alleged
use of force violated his constitutional rights.  This, plaintiff
has failed to do.

In evaluating plaintiff's claim of excessive force, the
Court is mindful that, while an inmate must be protected from the
"unnecessary and wanton infliction of pain by prison officials,"
prison officials must maintain order and discipline "in an often
dangerous and unruly environment." *Ort*, 813 F.2d at 321-22.
Thus, prison officials must be extended deference in acting to
insure the proper administration, safety, and security of a penal
institution.  *Id.*  "The infliction of pain in the course of a
prison security measure, therefore, does not amount to cruel and
unusual punishment simply because it may appear in retrospect
that the degree of force authorized or applied for security
purposes was unreasonable, and hence unnecessary in the strict

12

sense." *Id.* at 323.

Indeed, inherent in the protection afforded by the Eighth Amendment is the principle that "not 'every malevolent touch by a prison guard gives rise to a federal cause of action.'" *Clark v. Johnson*, 2000 WL 1568337, *12 (S.D. Ala. 2000) (quoting *Hudson*, 503 U.S. at 9-10). The objective component of an Eighth Amendment excessive force claim "necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9-10 (quoting *Whitley*, 475 U.S. at 327).

While the Supreme Court in *Hudson* did not define "*de minimis* use of force," it held that neither "serious" nor "significant" injury is required to satisfy the objective component of an Eighth Amendment claim, nor is any arbitrary quantum of injury an absolute requirement of an excessive force claim, apparently out of concerns that certain forms of torture are capable of inflicting extreme pain without leaving any mark or tangible injury. *Id.* at 9 ("Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury."). At the same time, the Court suggested that the degree of injury received is relevant to determining whether more than *de minimis* force was used. *See id.*, 503 U.S. at 10 (blows causing bruising, swelling, loosened teeth and a cracked dental plate do not

13

constitute a *de minimis* use of force).

In the present case, there are no allegations of torture designed to inflict extreme pain without leaving tangible injury or conduct that otherwise is so egregious that one could reasonably call it repugnant to the conscience of mankind. Therefore, if plaintiff suffered only *de minimis* injuries, that would be an important factor in determining whether more than *de minimis* force was used.

Plaintiff's medical records reflect that he was examined approximately twenty-five minutes after the altercation with Officer Moody, and, at that time, the prison medical staff noted his condition upon admission as "good." (Doc. 10, Ex. A at 5). The prison medical staff cleaned plaintiff's finger, applied a steri-strip, and administered a tetanus shot to him. (*Id.*). Plaintiff was also given Motrin for pain, prior to being discharged a mere fifteen minutes after he was admitted. (*Id.*).

Plaintiff's only claim of injury in this action is that he has suffered a cut to his right middle finger.[4] (Doc. 1, doc.

---

[4]Plaintiff has submitted copies of three sick call request forms dated May 31, 2005, June 18, 2005, and July 15, 2005. (Doc. 31, Exs. 2, 3, and 4). These records indicate that subsequent to the March 16, 2005, incident, plaintiff sought medical care on three separate occasions, complaining of pain in his right middle finger. Based upon a review of these records as well as the remainder of the record in this action in its entirety, there is no evidence of any broken or fractured bone, or any injury other than a cut to plaintiff's finger. (*Id.*). In fact, the records indicate that the treatment plaintiff received was generally limited to application of a cleanser and a band aid. Plaintiff has not disputed the accuracy of these records.

14

31).  Plaintiff's alleged injury does not establish a
constitutional violation under the circumstances of this case.

In determining whether the extent of plaintiff's alleged
injury indicates the use of excessive force in this case, the
Court finds instructive the types of injuries which have been
held by courts of appeal to be insufficient to support excessive
force claims under the Eighth Amendment, such as: lacerations,
bruises, cuts, and swelling as a result of a guard hitting
plaintiff's hand with a plastic box when plaintiff reached
through a trap in the door of his cell, *White v. Matti*, 2002 WL
31887792, *2 (7th Cir. 2002) (unpublished); bruises on a
prisoner's back from being shoved into a door frame, *DeWalt v.
Carter,* 224 F.3d 607, 620 (7th Cir. 2000); pain, swelling, and
bruising from a guard closing a cuffport door on a prisoner's
hand, *Outlaw v. Newkirk,* 259 F.3d 833, 839-40 (7th Cir. 2001); a
bruised shoulder from being shoved into a wall, *Markiewicz v.
Washington*, 175 F.3d 1020, *1 (7th Cir. 1999) (unpublished); a
sore, bruised ear lasting three days, *Siglar v. Hightower*, 112
F.3d 191, 193 (5th Cir. 1997); a 1.5 inch scratch on the back of
the hand from handcuffs, *Schoka v. Swinney*, 53 F.3d 340, *1 (9th
Cir. 1995) (unpublished); daily headaches, not requiring
treatment, from being hit with a water bucket, *Lunsford v.
Bennett*, 17 F.3d 1574, 1582 (7th Cir. 1994); and a sore and
swollen thumb from being hit with keys, *Norman v. Taylor*, 25 F.3d
1259, 1263 (4th Cir. 1994).

This Court also has found certain injuries to be insufficient to support an Eighth Amendment excessive force claim: a scratch on plaintiff's side from a correctional officer pushing, shoving, and hitting plaintiff in an effort to force him to comply with an order to pick up his hoe and get back to work, *Walker v. Thames*, 2001 WL 394911, * 6 (S.D. Ala. 2001); scratches on plaintiff's elbow, bump and one-half inch skin tear behind the ear, abrasion on the shoulder, and jaw pain from correctional officer pushing plaintiff into a glass window while taking him to a holding cell, *Lanier v. Fralick*, 2000 WL 1844679, *5-6 (S.D. Ala. 2000); blow to the forehead with a baton, resulting in no bruising or swelling, *Clark*, 2000 WL 1568337, *18-19.

On the other hand, the following types of injuries have been held by courts of appeal to be sufficient to support excessive force claims: cuts, scrapes and contusions to the face, head, and body from a group beating, *Gomez v. Chandler*, 163 F.3d 921, 925 (5th Cir. 1999); a broken finger, *Escobar v. Zavaras*, 149 F.3d 1190, *3 (10th Cir. 1998) (unpublished); cuts, bruises, a swollen hand and a possible broken finger, *Mitchell v. Maynard*, 80 F.3d 1433, 1440-41 (10th Cir. 1996); and permanent scarring and numbness from handcuffs, *Davidson v. Flynn*, 32 F.3d 27, 29 n.1 (2d Cir. 1994).

Also, in *Anderson v. Jones*, 1999 WL 1565203, *6-7 (S.D. Ala. 1999), *aff'd without opinion*, 245 F.3d 795 (11th Cir. 2000), this Court found the approach used by some courts to evaluate claims

16

of physical injury under 42 U.S.C. § 1997e(e), to be instructive in evaluating a plaintiff's injuries in an Eighth Amendment excessive force claim:

> "[T]here are numerous scrapes, scratches, cuts, abrasions, bruises, pulled muscles, back aches, leg aches, etc., which are suffered by free world people in just everyday living for which they would never seek professional medical care. Thus, an appropriate *de minimis* standard would be whether as a common-sense category approach to the injury: would the injury require or not require a free world person to visit an emergency room, or have a doctor attend to, give an opinion, diagnosis and/or medical treatment for the injury?)"

*Anderson*, 1999 WL 1565203, *6 (plaintiff's *de minimis* injuries from prison guard hitting him with her fist after he had been restrained were "beyond constitutional recognition") (quoting *Luong v. Hatt,* 979 F. Supp. 481, 486 (N.D. Tex. 1997)).

Although the Court is aware that, even in the absence of serious or significant injury, a plaintiff can establish a constitutional claim based on excessive force, defendants' actions in this case, as described by plaintiff, do not involve diabolic or inhuman torture designed to inflict extreme pain without leaving any mark or tangible injury, nor are they otherwise so egregious that one could reasonably call them repugnant to the conscience of mankind. Assuming, as plaintiff alleges, that Officer Moody intentionally kicked the door on his hand, cutting his finger, his injury, *if any*, was temporary and *de minimis* and simply does not support his claim that he was subjected to anything other than *de minimis* force, which is

17

insufficient to establish a constitutional violation under the
Eighth Amendment.[5]   While the Court certainly does not condone
the unjustified use of force by prison officials, plaintiff's
allegations regarding Officer Moody's use of force against him
fall short of what is required to state a claim for excessive
force under the Eighth Amendment.  As plaintiff has failed to
prove a constitutional violation, all cruel and unusual
punishment claims against defendants Moody and Dunsford are due
to be dismissed.

        If a party "fails to make a showing sufficient to establish
the existence of an element essential to that party's case, and
on which the party will bear the burden of proof at trial," Rule
56(c) mandates that summary judgment be entered against the
nonmovant.  *Celotex Corp.*, 477 U.S. at 322.  "No material issues
can be in dispute where the plaintiff's evidence fails to
establish a constitutional violation."  *Bennett*, 898 F.2d at
1534.  Therefore, since no constitutional violation has been
established, defendants' motion for summary judgment is due to be
granted.

_____

        [5]This case is similar to that of *White v. Matti*, 2002 WL
31887792 (7th Cir. 2002) (unpublished), in which the plaintiff
prisoner, just as in this action, put his right arm through the
trap in his cell door and refused to return his arm into his
cell.  The plaintiff claimed that the defendant officers used
excessive force when they "beat his hand with the plastic
medication box, causing lacerations, bruises, cuts and swelling."
*Id.* at *2.  The Seventh Circuit, in determining that the
plaintiff did not have a claim for excessive force, acknowledged
that the plaintiff was violating prison rules by keeping his hand
out of the trap door, that the proportionality of the force used
to the threat posed was reasonable, and that the injuries were
minor.  *Id.*

## IV. CONCLUSION

Based on the foregoing, the Court concludes that defendants Isaac Moody and Eddie Dunsford are entitled to summary judgment in their favor on all claims asserted against them by plaintiff. Accordingly, it is recommended that defendants' motion for summary judgment be granted, that this action be dismissed with prejudice, and that judgment be entered in favor of defendant Isaac Moody and defendant Eddie Dunsford and against plaintiff David L. Johnson on all claims.

MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1.   Objection.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.   <u>Transcript (applicable where proceedings tape recorded)</u>. Pursuant to 28 U.S.C. § 1915 and Fed. R. Civ. P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

DONE this 28th day of March, 2006.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE